My name is Anthony Rodriguez and I'm for the petitioner, Basaro Mble Home Pk, LLC. I guess the primary point that I wanted to address in this case is the applicability of Williamson County. Williamson County clearly doesn't apply in this case. My clients are not seeking just compensation for a permissible taking. They have alleged that there is impermissible conduct by the City of Fremont. And under the U.S. Supreme Court's decision in Lingle, I believe the Lingle Court made it clear that when the issue is, is it a due process violation based on arbitrary conduct or an impermissible taking where the purpose asserted for the taking is a pretext, that both of those types of claims are immediately ripe for review. So why aren't they barred by the statute of limitations? Out of the frank, then into the fire. Into the fire. I mean, to me, the whole case turns on a resolution of that issue. Well, I guess the issue is, are they facial claims or are they as-applied claims? And I believe that they're as-applied claims. I don't understand how it could be an as-applied claim if you just conceded that they're not seeking compensation for the impermissible taking. It has to be a facial challenge. I haven't been able to find any case law that says that. Nor have I. But to me, the fact that you're seeking, not seeking just compensation, doesn't mean that you're either not entitled to have the ordinance declared unconstitutional or. Nobody's arguing that you wouldn't, if the claim were timely raised, have a claim to challenge under the substantive due process clause the rationale for the enactment. The question is, are you too late to bring it? Well, what I was going to say is that you can also get damages. So just because you're not seeking just compensation doesn't mean that you haven't been damaged. But, you know, I looked at three cases in particular, and they were on the due process issue, the Caroline Products case, which was a U.S. Supreme Court case, the Lockery case, which was the Ninth Circuit case dealing with the water shortage where there was a tribal issue of fact as to whether or not there was, in fact, a water shortage. And then the Nebia versus New York case, another U.S. Supreme Court case at 291 U.S. 502. You've got a couple old chestnuts in there. Let me ask you this. I mean, you've got two arguments, as I understand you, under Lingle. One of them is this is not a public purpose, which is really sort of a Kelo argument, if I can say it that way. Then, therefore, it's invalid regulation, because there's no permissible public purpose that would support it. Well, I think it's slightly different than a Kelo. I think in Kelo they were saying that giving the property to that developer, that private developer, was not a public purpose. And the Supreme Court said that it was a public purpose because of all the good things it was going to do for the economy in that particular community. But you're arguing that this is not a valid public purpose here, correct? What we're saying is even if there is a valid public purpose, that they've asserted that that is a pretext, that the real purpose is just to make those tenants mobile homes. But you and I are on the same page. It's a public purpose argument. You're saying they had no valid public purpose. They may pretend they have one, but they don't. Right, it's a pretext. That's been true from the first time they passed that ordinance. So on that one, I think you've got a statute of limitations problem. Well, I think that that goes back to the Hacienda case and these two old chestnuts that I just cited. In both of the old chestnut cases, what the court said was that when you're looking at a due process violation, facts change. And what was reasonable – See, that's your second argument, which is the one I want to get at, which is to say, well, this is a due process violation because essentially it's confiscatory. I mean, that's the old language. Have the facts changed such that it was not confiscatory when it was originally passed, and it is confiscatory now, and have you alleged that change of fact? Well, what I've alleged is that when the city of Fremont first enacted rent control, they said that there were excessive rents, and that was the reason why they enacted the ordinance, because there was, one, excessive rents, and two, this bargaining position, unequal bargaining positions that the park owners supposedly had over the tenants. And I can't tell you as I sit here today whether or not those two things are really true, but there may very well have been excessive rents in 1987 when they initially enacted the ordinance. In 1992 they had an emergency ordinance where they reenacted some stuff saying that there were all these emergencies going on that required vacancy control at that time. And so if there were truly excessive rents back in the 1980s or the 1990s, then there would be no violation. But the question, the constitutional test for due process is the old language is confiscatory, the more modern language is no substantial economic value left, and so on. But have you alleged in your complaint that there's been a change such that the economic impact of this ordinance has only recently become so severe as to amount to a constitutional violation? Well, what we said was that whatever circumstances existed that justified the imposition of the original rent control ordinance back in 1987 or the amendments in 1992, that those conditions no longer exist and that today all rents are either below market or substantially at market. And because now rents are below market, then what may have been a rational act by the city is no longer a rational act. But you've not alleged a constitutional violation if all you're alleging is below market rent. You've got to allege no reasonable economic value left in your property. That constitutes the due process violation. Well, I think that's for a just compensation taking. I have to allege that under Penn Central. But under Wingle, for a due process or a pretext violation, I don't have to argue that there's no value left in my property. There are two pieces of what you're calling your due process. One is pretext, that is to say there's no public purpose, and the other one is no economic value left. Those are your two arguments. Well, no, I'm not arguing no economic value left at all. I mean, I just disagree with the Court. I don't think that that's the standard for that. What you're talking about is the standard for a Penn Central takings claim when you're seeking just compensation. But when there's a due process violation, I can have economic value and I can even be making a fair return on investment, but if the government acts arbitrarily, I still have a due process claim. Okay, I got it. And so that's what we're arguing. We're not saying that we've lost all economic value in the property. We definitely are not. You know, we would stipulate that we're not arguing that. We're not arguing even that we're not making a fair return on investment. What we're saying is that the government is setting rent. They have rent control when there's no need for it because all rents are either below market or at market. There are no above market rents, and that was one of the things that the district court ruled. She found that a market rent can be excessive. And then my question is, well, what does excessive mean? Excessive means in relation to something. In relation to what? In relation to the market. That's what an excessive rent is. And so, in reality, what you have in the world is you have above market rents and market rents and below market rents. And the proper purpose of rent control, the legitimate purpose of rent control is to take excessive rents and bring them down to market and also – That's a really interesting argument, then, because if we follow through your argument, if I've understood it correctly, something can be constitutional and comport with due process when passed. But then changing economic circumstances may make an ordinance that was constitutional when passed all of a sudden unconstitutional. Sure. And they have an obligation to withdraw it. Yeah, or somebody can challenge it like we did. But, yeah, I mean, I absolutely believe that. I mean, I just had a case down in Santa Cruz. I mean, it's not really a constitutional issue per se, but the Santa Cruz Mobile Home Rent Control Ordinance has a provision in it that says we'll impute the wages of the park owner for purposes of determining, you know, how much money they're entitled to at $7 an hour. Well, when they enacted that in 1982, that was fine. Today, that's a dollar below the minimum wage. So I wrote them a letter and said, would you please amend the ordinance? They haven't done it yet and they probably won't and we'll probably have to sue them and, you know, who knows what will happen. But that's an example of when circumstances change, what was once reasonable and rational may no longer be reasonable and rational. What obligation do you have in your complaint as to when this change took place that moved from being permissible to impermissible? Well, I don't know exactly when that happened. But that's critical if we're talking statutory limitations because you lose your cause of action arises when it becomes impermissible. And it may go fluctuate back and forth all the time. But what we're saying is today or in 2001, it was impermissible at that time. Counsel, the problem I'm having with your theory is with what the city council did in, was it 2002 when they last amended? And wasn't the effect of that amendment, in essence, beneficial to the mobile home park owners? It allowed them to adjust rents where before they had not been permitted to do so. Right. Right. It did. It allowed them to. Going back to the same concern that Judge Fletcher has been questioning you about, at what point on the scale between 1987 and today did the effect of the statute tip? Apparently it couldn't have been in 2002 because that actually would have made the teeter-totter tip in favor of the home park owner, would it not? I'm not sure what you mean by that. But in 2002, I'm willing to concede that there were below market rents in 2002 or whenever, 2000 I think actually was the year that they did the amendment. Whenever they did the most recent amendment, I would admit that there were below market rents at that time. And that's one of the reasons why we say what they did is irrational. How do you know that? How can you say that? How do I know there were below market rents at that time? Yeah. I mean, as I understood it, the city had actually commissioned some sort of a study of rents back in, when initially enacted. Have there been subsequent studies? Yeah. I've had an appraiser conduct probably three or four of them over the years, maybe even more. Can you answer Judge Fletcher's question then, now since you're armed with better information than the city has as to when the scale tipped? I think that there have probably been below market rents at some of those spaces going back 10 years. But what we're saying is, I mean, there's case law that says, for example, you have a continuing right to a fair return on your investment under the Constitution. Pardon me? Is your argument now for each space? Yeah. Every time there's a turnover, there's a new violation because it's as applied. So the statute of limitation would never run on, assuming that there was annual turnover, as apparently there is. Well, you know, it may have run on one 10 years ago or even, you know, two years before the ordinance. But the ones that happen month after month on an ongoing basis and are probably going to keep going on until the year 2019, I believe each time that happens there's a new violation because the facts could change back the other way. The market could collapse. Rather than chasing this elusive point in time, which is not getting us anywhere, what do we do with the language in the cases that talk about the fact that the legislature could have believed that in enacting this legislation it was actually protecting the renters and that the government doesn't have to show every time that some action is taken that conditions have changed? Well, I think that that's part of the test, that the government could. You know, could a reasonable government have believed that they're protecting tenants? That's part of the test. But then the test also goes on to say, but is there any logical basis for it? Well, one of the problems you have, unlike typical rent control for apartments, mobile home spaces are kind of a different class of rental properties, are they not? And there has been no change since 1987 in the number of total mobile home spaces available in the city of Fremont. Yeah, that's true. So we know what the size of that market is. We also know that there's been no change in the costs that are, no, in the fact that it's harder to simply vacate a mobile home. You can't take it with you without great expense and risking damage to the mobile home, right? Well, all of those things are asserted by the city of Fremont, of course. But what we're saying is that that's really not true, that, you know, you can go to Nevada and there's no rent control in Nevada, and there are mobile home parks everywhere. You can't go to Nevada by economically moving your mobile home from the city of Fremont and taking it off its permanent foundation without running the risk of damaging it. No, but you can test the theory. And the problem with the theory of the city, if it's reasonable or not, is you can go to Nevada, Arizona, Oregon, and 300 cities in California that don't have mobile home rent control, and all of those markets function perfectly. There's no problem. So the whole argument that, well, it costs so much to move a mobile home and all this stuff, it really isn't a factor in the way the mobile home market works, because the way the mobile home market really works is people buy and sell mobile homes in place all the time. And so that's like saying, well, because there are no vacant spaces or it's hard to move mobile homes means that there's no market. But in reality, you know, 5% or 10% of that market is turning over every single year. There's a tremendous market for mobile homes in Fremont and out of Fremont. I'm still having a hard time understanding why these arguments wouldn't have been as viable in 1987 or 1992 and why you shouldn't be barred from making them now by the statute of limitations. Because I don't see the change here that just has occurred. Well, if we were making a facial challenge to the 1987 ordinance, I think you'd be right. We'd be time-barred. But if an as-applied challenge accrues, I mean, in the Hacienda case, the court I think made it clear that it's not just the enactment of the ordinance that causes this damage or whatever you want to call it. It's the ordinance coupled with whatever the economic circumstances happen to be. And if everybody in Fremont has above-market rents, then my client's not losing anything on the sale of these mobile homes. Nothing's happening to my client because he's got above-market rents. If everybody in Fremont has below-market rents, then my client is losing something and the tenants are getting this windfall. So it really depends on whether rents are above-market, at-market, or below-market to determine whether or not there's a constitutional injury taking place. It does change all the time. So you would argue for a discovery-type statute of limitations where once you discover that it's affecting your client adversely, then that's when it runs. Is that your argument? Well, not really. It's really, in my view, there's a new injury every time there's a sale with a below-market rent, if we're doing an as-applied challenge. I believe there's a continuing right to have your constitutional rights protected as-applied. That's the whole purpose of how do people challenge laws that are 40 and 50 and 80 years old? You know, some racially-restricted covenant, how do they challenge that 80 years later? Because 80 years later, I'm an African-American or I'm a Hispanic trying to move into that neighborhood, and they tell me no. And the government can't come in and say, well, the statute of limitations expired 80 years ago. You're out of luck. Would you say as a backstop that the amendment of 2002, without having that moving target, would give you a claim within the period of limitations? In other words, when the city looked at it again in 2002 and adopted the amendment? Well, I think that the 2002 amendment, I mean, I think that we can challenge that on its face and as-applied, so it gives us another claim is what it really does. But the ongoing violations are going to occur as long as we can show that they're below market rents in each of the individual transactions. What made the 2002, in terms of a facial challenge, different than the original ordinance is the 2002 ordinance had two tiers. And in one tier, you got to go up 15%, but in the other tier, you got to go up to market. And so it showed on its face for the first time that rents in Fremont were below market. None of the other ordinances indicate that rents were below market. All the other ordinances indicated that rents were above market on their face. So how can I make a facial challenge if on its face the ordinance implies that the rents are above market? The first time there was ever a chance to make a facial claim was when they enacted an ordinance that made it clear on its face that rents were below market. That's why they have the 15% thing, to protect those tenants so they can get the higher price, which is what they want. They want the above market price for their mobile homes. And, you know, it goes back to, I mean, I really think that one of the biggest problems with the case was when the district court decided that market rents could be excessive, which is, I mean, that makes absolutely no sense to me. I don't understand how if it's excessive in relation to something, it has to be excessive in relation to the market. She's not saying it's excessive in relation to the income of the people that live in the apartment. I've been wrong in many ways, and here I am wrong again. I thought maybe we would do a quick argument. You're now up to 20 minutes. We'll give you a chance to respond, however. So let's hear from the other side, and then we'll give you a chance to come back. Good morning. Rochelle Brown for the city of Fremont. The city's argument has changed a little bit given the intervening Ninth Circuit cases between the time we filed our brief and now. And so we're not arguing that the substantive due process claim is not right. However, based on those new cases, and particularly the Action Apartment Association case, which held for the first time that a substantive due process challenge to an ordinance is subject to the same statute of limitations as the takings claim. And for that reason, the substantive due process argument is barred by the statute of limitations. I sent a letter to the court about the new cases, and I have to apologize. There is an error in that letter. It says that it was the equity lifestyle case that said that the same Section 1983 statute of limitations applies to substantive due process. In fact, it was the Action Apartment Association case that said that. The city's position is that if a facial takings claim is alleged, it is either unripe or barred by the statute of limitations. All of Becerra's claims challenge vacancy control, and that was adopted in 1992. The amendment does not give rise to the right to challenge vacancy control because that's been in effect since 1992. And if you look at the De Anza case, De Anza v. County of Santa Cruz, there, there was a challenge to vacancy control, as there is in this case. There, there was an amendment to the ordinance, as there was in this case. But the ordinance had absolutely no effect on the vacancy control provision, and so the court said the statute of limitations ran from the adoption of the ordinance as the Lavalde and the Hacienda Valley case. These cases are all cited in the brief. That if there's an adequate compensation remedy, a facial challenge, the statute of limitations, there are challenges unripe until compensation has been set in state court or if for some, if there's no adequate remedy in state court or this court were to find that because compensation is not sought, you don't need to go to state court, the statute of limitations at the time vacancy control was adopted by the city was one year. That ran in 1993, and that applies to the challenge to vacancy control. And the challenge made in De Anza and in Lavalde v. City of Palm Desert and De Anza, which discussed this, they all involved a challenge to vacancy control on the ground that it transfers a premium to residents and therefore it's irrational and should be set aside. The Ninth Circuit has repeatedly rejected the claim that vacancy control does not serve a public purpose and rejected the claim that it's not rationally related to that claim. And I would cite the court to Sierra Lake Reserve v. City of Rockland, to Lavalde v. City of Palm Desert, to Hacienda Valley v. City of Morgan Hill. They all find that when, as does the equity lifestyle case, which I've cited in my letter to the court, that when you're asking whether an ordinance has a public use or violates substantive due process, the test in either case is, is there a legitimate public purpose, and could a rational legislator have believed at the time the ordinance was adopted that it could address the problem? And it says you look at the time the ordinance was adopted. And the reason for that is, is that the substantive due process test, the public use test, do not look at how effective the ordinance is, but only whether a rational legislature could have believed that it would be effective. Kelo says the same thing, and the condemnation case that I brought to the court's attention in my letter, which was decided just a couple of weeks ago, says the same thing about the public use test. And Kelo explains that the public use test simply means legitimate public purpose. So there's no difference between a public use argument and a substantive due process argument. And in this case, both are barred by the statute of limitations. The public use and substantive due process, again, arise at the time an ordinance is adopted, not later. Because, again, the question is what legislators could rationally have believed when they adopted the ordinance. If CERO has alleged an as-applies taking, and I don't believe that it has, which I'll explain in a minute, then it would be unripe, because every single case that talks about an as-applies taking involves an impact on the plaintiff. We don't have that here. Plaintiff hasn't alleged any impact of vacancy control on its park different than on the other parks that it applies to, which means that he's challenging as a general principle. Now, the fact that he's alleged that there are no more excessive rents is not the kind of allegation that he's making. That can give rise to an as-applied taking. All it shows is that the intent of the ordinance, which is to prevent excessive rents, the ordinance has been effective. It's doing what it's supposed to do. Significantly, there's no challenge to the findings that were made in 1992 that there are reasons for needing mobile home rent control, that there is a shortage of spaces, that it's expensive to move them, even if you can find a place to move them to, and that there's an imbalance in bargaining power. The plaintiff doesn't dispute those findings. He hasn't disputed the need for the ordinance. One of the purposes of the ordinance, and this is discussed in Laval versus City of Palm Desert, is that when someone buys a mobile home park, they make an investment. They pay a lot of money for it. Sometimes they have a mortgage on it. They incur expenses for maintaining it, for fixing things when they go broke, sometimes for improving the space around it, for adding on to it. If they need to move because they can't afford the rent, they have to sell the home. Now, Becero says, well, when you have below-market rents, and there's then the selling homeowner gets a windfall. But the obvious corollary of that, which Becero ignores, is that if the rent is too high, if the rents are excessive, the selling homeowner is going to lose money. And one of the, or may, as the studies show, have difficulty selling it at all, and then lose the whole thing. So the purpose of protecting this investment is a valid public purpose, and Laval expressly so holds. So as I said, Becero seems to be arguing that there's no statute of limitations at all on his claims, and that's simply wrong. Let me ask you this. Assuming that something happened in 2002 with the adoption of the new ordinance, and then you stipulated to a five-year extension for settlement negotiations, do you argue that even under a 2002 amendment there would be a statute of limitations problem for Becero? You know, what the tolling agreement did was toll the right to challenge the amendment. It expressly reserved the right, any right statute of limitations that the city might have. That the city might otherwise have. We're not saying that a challenge to the amendment would have been time barred. We're saying that you can't challenge the change from full vacancy control to providing some vacancy increases. I understand your argument there. Now, let's assume that a homeowner or a tenant was dissatisfied with the 2002 ordinance. Would they have a right to have brought a suit challenging the fact that the owner was allowed to increase rents by 15 percent? Yes, I don't think they would have a valid claim, but the statute of limitations would be no bar. They didn't enter into any tolling agreement. And it could bring it within the same period that the owner could, but you're saying the owner's is barred because it's not the vacancy control issue that came in 1992. I'm saying that there was no tolling agreement as to the homeowners, the residents. So they would have had to file any challenge to the amendment. It was adopted by 2001. In their case, there would be a new injury, because as to them, the impact of the ordinance, they would have allowed rent increases that they weren't subject to before. I don't think they would have had a valid basis for the ordinance. The ordinance and the settlement agreement and the staff reports that we asked for judicial notice of clearly show a valid public purpose for making the vacancy control less important. Less stringent for allowing some vacancy increases. It was a compromise that the city found would still protect residents, but would give residents some greater increase, which they claimed that they needed. So they would have a claim that would not be barred by the statute of limitations, but you're saying that the homeowner, the mobile park owner's claim is barred. Because they suffered no new injury. Limitation on how much they could increase rent didn't give them a fresh bite of the apple? No, because in 1992, they couldn't increase rent at all. All right. Now, to give rise to a new statute of limitations, there has to be a new injury. But they're saying it's not enough in light of the current condition. But that's the same claim they were making before, and if you read Becero's briefs, they essentially, in their claims that vacancy control is irrational, make no distinction between limited vacancy increases and no increases whatsoever. They're saying any vacancy control is arbitrary, irrational, and capricious. And as I've said, the Ninth Circuit has three times rejected that very argument. So even if this were not barred by the statute of limitations, it would fail on its merits, the district court so held. Because it's already established that rent control and vacancy control are legitimate. Rent control is legitimate, and vacancy control is rationally related to preventing excessive rents and protecting tenant investment. In its briefs, Becero cited Palazzolo to suggest that there was no statute of limitations on this kind of claim to a facial claim, such as, I believe, vacancy control. And equity lifestyle expressly rejects that argument. It said what Palazzolo means is that a subsequent, that facial challenge are still subject to the statute of limitations. Just that if somebody, a subsequent purchaser couldn't have raised that claim, that subsequent purchaser could, would still have to do it then within the statute of limitations from the date that person purchased. And that also arose in the context of an as-applied claim. And if there is an as-applied claim, the as-applied claim is really the same, but assuming that it were possible to find a difference between the facial takings and substantive due process claims and an as-applied claims, the only case which directly addresses this is, is that there is an as-applied claim. And that is the Hacienda Valley v. City of Morgan Hill case. And significantly in that case, the park owner didn't just allege something like there are no more excessive rents, because that's really nothing as-applied to the particular plaintiff. And it really doesn't show that the ordinance is irrational in any event. But in that case, there was a rent increase application. And the challenge to the vacancy control in that case, I'll say, arose in the context of there being an increase for a rent increase application. It was either a denial or less than the park owner wanted. And it was based on that and allegations about the complex, about economic factors, which made it irrational in that case. So in that case, a statute of limit, an as-applied claim could be stated, but it had to go to state court first. It was unripe. It was dismissed as unripe, even though a claim, an as-applied claim was alleged. Counsel for Becero argued that because there are what he calls two tiers in the ordinance, larger increases for commercial purchasers. That that somehow shows that markets, that rents were below market. I'm unable to see any logical connection between those two things. And there's a rational basis for treating commercial sellers. That arises in the context of someone who just abandons their home, just walks away and leaves it there. And a mobile home dealer comes in and buys that home, but then takes that home out and puts a new one on and sells it to someone. And in that kind of commercial business transaction, the city didn't feel that the same degree of protection was needed. Do we have any questions? I think not. Thank you very much. No. You've used your time, but we'll give you one minute. I just think that what the city's arguing to do is take the facial statute of limitation rules and apply it to an as-applied challenge. I think that's really the bottom line. De Anza and that whole line of cases dealt with years ago, people used to make the argument that the mere enactment of one of these ordinances created a physical taking or some kind of transfer. And that in and of itself was unconstitutional. Courts have addressed that all the way to the U.S. Supreme Court. Rejected the theory. That's what the statute of limitations in those cases is based on. Hacienda is the one that really deals with you have to look into the facts to see when the statute runs. And Hacienda was not right because they made a claim for just compensation. We're not making a just compensation claim here. We're making a due process claim and a pretext claim. So I think the rightness part of Hacienda doesn't apply, but the statute of limitations part does apply. Okay. Thank you very much. All right. Thank you. And the last case on the argument calendar this morning, I may have mispronounced the name. Davon Ayam versus McKayze.
judges: Fletcher, Tallman, Dawson